IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, as subrogee of Amy and Todd Carkoski | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 8:08CV39 |
| HEWLETT-PACKARD COMPANY | ) ) | |
| Defendant. | ) | |

**MEMORANDUM BRIEF IN SUPPORT OF MOTION TO COMPEL**

NOW COMES the Plaintiff, Allstate Insurance Company as subrogee of Amy and Todd Carkoski, by and through their attorneys, COZEN O'CONNOR, pursuant to Federal Rule 37(a)(3)(B), and in support of its Motion to Compel submits the following memorandum of law:

**BACKGROUND & DISCOVERY HISTORY OF THE CASE**

The Carkoski home was severely damaged by fire on November 13, 2006. Immediately following the fire, the Carkoski family made a claim to their own insurance carrier, Allstate. Allstate accepted the claim, helped the Carkoski family rebuild their home and replace their contents. Simultaneously, Allstate undertook an investigation into the cause of the fire and determined that the origin of the fire was at or near a laptop computer manufactured by the Defendant. Thereafter, HP was placed on notice and given a full opportunity to examine the fire scene in its damaged condition. After completing the scene exam, Allstate and HP agreed that the only artifacts that needed to be retained for further review were the laptop and the other electrical items in the immediate vicinity of the laptop, such a printer, alarm clock, a small camera and other similar items.

Thereafter, the parties selected a mutually convenient date and all items removed from the fire scene were reviewed in a laboratory setting on several occasions. Based on this information, Plaintiff has disclosed five experts: Ken Ward, Dan Choudek, Adam Bainbridge, Dr. KM Abraham and Ron Pape. Briefly, their opinions are as follows:

- Ken Ward is a fire investigator who has opined that the fire originated at the laptop computer.

- Dan Choudek is an electrical engineer, who performed an exercise known as arc mapping where he is able to trace how the fire attacked electrical circuits in the home and by doing so he can plot how the fire spread and also where the fire started.

- Adam Bainbridge is an electrical engineer, who was able examine and eliminate all other electrical items removed from the fire scene near the area of origin, other than the HP computer.

- Dr. KM Abraham has a PhD in chemistry and is a recognized expert in lithium ion batteries. Dr. Abraham has opined that the fire in this case was the result of an internal short circuit that resulted in a uncontrolled thermal runaway reaction that caused the lithium ion battery to vent of heated particles, capable of igniting nearby combustibles.

- Ronald Pape specializes in fire modeling. Pape was able to confirm that the fire damage was consistent with the fire originating at the computer by inputting all known information into a fire modeling program. The computer model was able to re-create the fire and confirmed that the burn patterns and fire damage are most consistent with a fire that originated at the HP computer.

Interestingly, HP has had five large scale recalls for their laptop computers over the last five years where it was admitted that the lithium ion batteries were failing and causing fires (See

recalls, attached as Exhibit "A"). When this lawsuit was first initiated, Plaintiff issued written discovery requests in September of 2008, which HP did not respond to until September 25, 2009, ostensibly due to the detailed and complicated nature of the requests[1] (See Defendant's Responses, attached hereto as Exhibit "G"). Included in these requests was a request for all written exchanges between HP and the CPSC, which HP objected to since all documents related to the CPSC were equally available to the Plaintiff. In addition, Plaintiff requested very specific documentation relating the construction, testing and operation of the cells for this particular model (See Exhibit "G", Production Request 38-61). In response, HP objected and generically produced its project file. The project file produced was approximately 13,000 pages and while there was some generic discussion of the laptop's batteries, none of the documents produced were directly responsive to any of the Plaintiff's specific requests.

While Plaintiff was waiting for the Defendant to respond to its discovery requests, it also issued a subpoena to Underwriters Laboratories and then shortly thereafter the Consumer Product Safety Commission as well. These subpoenas sought information related to HP's laptop design for the subject model, as well as the design, testing of and failure rate of HP's lithium ion batteries for the subject laptop and the ones involved with the recall.

At the time these subpoenas were issued, Plaintiff's counsel suggested that a protective order be put in place to protect the documents produced because he knew that the documents HP submitted to the CPSC and UL likely contained confidential and proprietary information that was expected to be kept confidential. Thereafter, the parties moved for and the Court entered a protective order (Exhibit "D").

---

[1] During the year that these requests were outstanding, counsel for the parties were consistently in contact with each other pursuant to LR 37.1 and believed real progress was being made so that a Motion to Compel was not appropriate (Exhibit H). In addition, during this time period, Plaintiff's counsel was taking additional steps to request this information through other sources, specifically Underwrriters Laboratories and the Consumer Product Safety Commission.

On or about June 7, 2009 and pursuant to local rule, Plaintiff forwarded to defense counsel the proposed CPSC subpoena to see if there was any objection to the documents being requested.  In response, counsel for HP indicated that he "had no objection on the subpoena, with the caveat that we want the documents to be subject to the protective order (and that the CSPC be made aware of the same), at least until we have an opportunity to review what is produced"  (See e-mail between counsel, attached hereto as Exhibit "H")

Thereafter, the subpoena was issued to the CSPC.  Under laws governing the CPSC, the CPSC does not have to respond to subpoenas so it treated the request as a Freedom of Information Request (See CPSC letter, attached hereto as Exhibit "I").  As a Freedom of Information Request, the CPSC is required to gather all responsive documents and it then submits a complete copy of all documents to the party who was the target of their investigation. The CPSC then allows that party to object to the production of documents that the target may consider proprietary and confidential (Exhibit "I").  In this case, despite not having an objection to the subpoena initially and having a protective order in place, HP reviewed these documents and objected to the production of any information relating to HP's knowledge of the failure of the lithium ion batteries in its computers.  Thereafter, CPSC produced a bates labeled copy of its file with the materials objected to by HP redacted  (See letter from the CPSC, attached hereto as Exhibit "J").  Rather than file a needless, expensive and time consuming appeals or ancillary actions challenging the CPSC's decision, Plaintiff chose the simple route of serving additional discovery requests to HP that sought by bates labeled pages all the documents that HP had instructed the CPSC not to produce.  In response to these requests, HP has objected, claiming that documents sought were not relevant to this litigation, that the request were duplicative of the

materials obtained from CPSC, and were nothing more than an attempt by Plaintiff to thwart CPSC procedures.

After receiving these objections, pursuant to LR 37.1, Plaintiff's counsel directed a letter to HP's counsel asking that they reconsider their position. In addition, on June 1, 2010, counsel for HP and Allstate spoke pursuant to LR 37.1, and were not able to resolve their differences on this issue. Therefore, Court intervention is necessary.

### I.   THE DOCUMENTS SOUGHT ARE RELEVANT TO THIS LITIGATION AND THERE IS A PROTECTIVE ORDER IN PLACE THAT ADEQUATELY PROTECTS HP'S PROPRIETARY INTERESTS

The documents now at issue stem originally from a subpoena issued to the CPSC on June 9, 2009. In addition, HP had previously indicated that it could not produce these documents and that they were equally available to Plaintiff by a request to CPSC. Prior to issuing that subpoena, a protective order was entered on February 23, 2009 (See Exhibit "C"). Prior to issuing the subpoena, it was forwarded to HP as required by local rule to see if HP had any objections. On June 7, 2009, HP indicated that it "had no objection on the subpoena, with the caveat that we want the documents to be subject to the protective order (and that the CSPC be made aware of the same), at least until we have an opportunity to review what is produced." Instead, despite HP's recognition that a protective order was in place and that the documents were equally available to the Plaintiff through the CPSC, HP reviewed the documents, redacted them and instructed the CPSC to do the same. Therefore, it is clear that HP has engaged in a procedural run-around game with Plaintiff and it has taken steps to make sure that the documents are not equally available to the Plaintiff.

5

The general scope of discovery is defined by Federal Rule of Civil Procedure 26(b)(1). Pursuant to that rule, a party may obtain discovery regarding any non-privileged matter that is relevant to the subject matter at issue in the action. Chemical Bank v. Dana, 149 F.R.D. 11 (D. Conn. 1993).

HP's relevance objection is without merit. The discovery rules are broadly construed in that discovery requests need only encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. Yancey v. Hooten, 1998 WL 314586 (D. Conn.) *citing* Oppenheimer Fund Inc. v. Sanders, 437 U.S. 340, 351 (1978). Discovery is not limited to the issues raised by the pleadings, or to the merits of the case, as discovery is itself designed to help define and clarify the issues. Oppenheimer Fund, *supra* at 351.

The documents sought in the Requests are certainly relevant to this litigation and the issue of the batteries in the HP laptop. The documents in question go to HP's knowledge of lithium ion failures within its computers. It will allow Plaintiff to compare the lithium ion battery failure in this case with other cases where HP has admitted a problem. Relevant information need only be reasonably calculated to lead to the discovery of admissible evidence. The documents sought in these Requests relate to lithium ion battery failures that involve HP laptop computers. The defect claimed in this litigation is a universal issue and the information requested is relevant beyond the specific notebook model and battery components at issue in this case. As such, this information is relevant and should be produced.

Because the documents are certainly relevant, and a protective order has been in place for some time now, Defendant cannot claim a privilege over disclosure of these documents to

Plaintiff.  In fact, since HP did not object to the issuance of the subpoena initially, its objections that it now is attempting to raise a year after the fact have already been waived.

Therefore, Plaintiff requests that this Court enter an order compelling Defendant to produce the documents requested in its Supplemental Production Request to Defendant.

## II.  THE SUPPLEMENTAL PRODUCTION REQUEST IS NOT DUPLICATIVE AND IS NOT AN ATTEMPT TO THWART INTERNAL CPSC PROCEDURES

HP's responses to Plaintiff's Supplemental Production request include objections based on an assertion that the documents Plaintiff requests are duplicative to documents Plaintiff received from the CPSC, and Plaintiff's requesting the documents is an attempt by Plaintiff to thwart internal CPSC procedures.

The documents requested are not duplicative of the documents received from the CPSC, because Plaintiff is seeking the unredacted version of those documents that are in HP's possession.  Plaintiff also seeks copies of any communications between HP and CPSC regarding the production of the files.  CPSC's mandate is that before producing these entire files, it was first required to confer with HP for its input regarding any proprietary information that HP may not want disclosed pursuant to this request.  HP redacted, or directed CPSC to redact, numerous pages and portions of the file that CPSC ultimately provided to Plaintiff.  CPSC was acting under the direction of HP when it provided the redacted files.  Due to the fact that there has been a protective order in place in this litigation for some time now, HP should not have redacted any information from these files, regardless of whether there was proprietary or trade secret information contained therein.  Indeed, the entry of the protective order, as HP recognized, was

for this very purpose. Therefore, Plaintiff is entitled to the unredacted files that CPSC provided as well as communications between HP and CPSC regarding the production of these files.

WHEREFORE, Plaintiff, Allstate Insurance Company as subrogee of Amy and Todd Carkoski respectfully requests that this Court enter an ordering compelling the Defendant Hewlett Packard Company to produce the documents requested pursuant to Plaintiff's Supplemental Discovery Request. Plaintiff further requests relief from the Court in awarding costs and fees for bringing this motion pursuant to Federal Rule 37(a)(5)(A).

        Respectfully submitted,

        s/Anthony J. Morrone
        Anthony J. Morrone

Anthony J. Morrone
Cozen O'Connor
333 W. Wacker Dr., Suite 1900
Chicago, Illinois 60606
Phone No: (312) 382-3100
Fax No: (312) 382-9763
amorrone@cozen.com

## **CERTIFICATE OF SERVICE**

I, Anthony J. Morrone, do hereby certify that on June 9, 2010, I electronically filed the forgoing Memorandum in Support of Plaintiff's Motion to Compel with the Clerk of the Court using the United States District Court for the District of Nebraska's Electronic Case Filing system, which will send notification of such filings to the following counsel of record:

Thomas E. Johnson
John A. Sharp
BAIRD HOLM LLP
1500 Woodmen Tower
1700 Farnam Street
Omaha, Nebraska 68102-2068

| | |
|---|---|
| Date: June 9, 2010 | s/ Anthony J. Morrone<br>Anthony J. Morrone |