**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, as subrogee of Amy and Todd Carkoski,<br><br>Plaintiff,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>Defendant. | CASE NO. 8:08CV39<br><br>**HP'S BRIEF OPPOSING PLAINTIFF'S MOTION TO COMPEL; BRIEF IN SUPPORT OF ORDER PROHIBITING DISCLOSURE OF UNREDACTED CPSC DOCUMENTS; AND BRIEF IN SUPPORT OF ORDER COMPELLING PLAINTIFF TO MAKE DR. K.M. ABRAHAM AVAILABLE FOR DEPOSITION** |

**I.  INTRODUCTION**

Defendant Hewlett-Packard Company ("HP") respectfully requests that Plaintiff's Motion to Compel (Filing No. 34) be denied in its entirety, and that the Court enter an Order under Federal Rules 26(c) and 37 specifying (1) that Plaintiff must cease its pursuit of completely irrelevant and proprietary information contained within redacted documents provided to Plaintiff by the United States Consumer Products Safety Commission ("CPSC"); and (2) that Plaintiff may not continue to refuse to produce Dr. K.M. Abraham for deposition.  <u>None</u> of the CPSC documents sought by Plaintiff involve the notebook computer model allegedly at issue in this case, nor any of the battery cell components in the 8-cell lithium-ion battery with which Plaintiff takes issue.  Such onerous "different product" discovery oversteps the bounds of permissible inquiry and is an improper attempt by Plaintiff to fish for a plausible defect theory to supplant the current lack of any such theory in the opinion of Plaintiff's proffered battery "expert."

Moreover, Plaintiff's refusal to produce Dr. Abraham for deposition is unjustified and inappropriate.  Dr. Abraham's opinions were formulated and disclosed, and his deposition scheduled, after a full opportunity to inspect and test the notebook battery at issue (including review of CT scans of the battery cells) and prior to Plaintiff's attempt to seek unredacted CPSC documents from HP.  The Plaintiff's use of the parties' subsequent dispute over production of CPSC documents to cancel Dr. Abraham's deposition is thus a red herring, and has no real bearing on Abraham's availability for deposition or the content of his already-disclosed opinions.  Accordingly, HP requests that the court direct Plaintiff to make Dr. Abraham available for questioning without further delay.

## II.   BACKGROUND

This is a subrogation case brought by Allstate Insurance Company ("Plaintiff"), for property damage which occurred due to an explosion and fire at the residence of Plaintiff's insureds, Todd and Amy Carkoski, on November 13, 2006.  *See, e.g.* Filing No. 1.  In sum, Plaintiff contends that, despite more than three and one-half years of apparent problem-free operation from a Compaq Presario model 2140US notebook computer owned by the insureds, a specific cell in the lithium-ion battery pack of the computer suffered an "internal" failure of an unspecified nature and somehow started the fire.  The notebook computer at issue, which was manufactured and assembled prior to its purchase on April 18, 2003, *see* Ex. A to Sharp Decl. (sales receipt), was jointly inspected, photographed, and ultimately CT-scanned by the parties' respective experts after commencement of the lawsuit.  *Id.* at ¶¶ 5-6.  The unit at issue contains an

8-cell lithium-ion battery pack which utilizes battery cells manufactured by Sanyo.  *See* Adams Decl. at ¶ 4; Sharp Decl. at Ex. B at Responses 2-4.

On March 13, 2010, Plaintiff disclosed its expert witnesses, including purported battery expert, Dr. K.M. Abraham.  *See* Sharp Decl. at ¶7.  Notably, Abraham's written opinion merely makes the bare assertion that an "internal" failure occurred in the battery cell.  *Id.* at Ex. D.  Thus, despite Abraham's inspection of the unit, battery, and cells, as well as his review of CT imaging of the cells, Abraham's opinion is simply devoid of any theory of defect – it entirely omits the required explanation of causation, never mentioning <u>how</u> or <u>why</u> the alleged internal cell failure suddenly occurred after years of problem-free operation.

Plaintiff disclosed Abraham's opinion after months of ongoing discovery, which included third-party document requests by both litigants, in addition to discovery between the parties themselves.  *See* Sharp Decl. at ¶ 8.  Throughout this discovery, HP has been cooperative and forthright.  After receiving voluminous and onerous document requests from Plaintiff, *see* Filing No. 36-7 (identifying 64 initial document requests, many with more than 10 subparts each), HP produced more than <u>ten thousand</u> pages of information to Plaintiff consisting of everything from manuals/computer documentation and warranty information to the <u>entire</u> project file HP was able to locate on the project that included the Compaq Presario 2140US.  *See Id.* at ¶4. Moreover, HP provided the regulatory model number for the unit to assist Plaintiff in obtaining documentation from Underwriters Laboratories ("UL"), *see* Filing No. 36-7 (Ex. G at No. 11), and identified for Plaintiff both the manufacturer of the battery cells contained in the unit's battery and the contract supplier which HP believes assembled

3

the computer battery using the Sanyo cells, such that Plaintiff was free to attempt third-party discovery from those entities. *See Id.*; *see also* Sharp Decl., Ex. B (Response to Plaintiff's Interrogatory No. 3).

Most importantly, HP informed Plaintiff that <u>no recall</u> of the relevant lithium-ion battery pack or its components at issue in this case has ever been conducted by HP or requested by the CPSC, that HP had never communicated with the CPSC about the subject model computer, and that HP is not aware of any complaints regarding failure problems with the battery components at issue in this case. *See* Id. Filing No. 36-7 (Ex. G at Nos. 3, 27, 32) and Sharp Decl., Ex. B (Interrogatory Responses 3, 10, 11, and 15). Despite this information, however, Plaintiff nonetheless issued a third-party subpoena to the CPSC, seeking a wide range of information on voluntary recalls of <u>different</u> HP products using <u>different</u> battery packs and <u>different</u> battery components covering <u>different</u> manufacturing and sale periods – none of which have any connection to the computer model or battery cell components at issue in this case. *See* Filing No. 36-1, Ex. A (recall bulletins); Sharp Decl., Ex. B (Interrogatory Responses 3, 10, 11, and 15); Adams Decl. at ¶ 5 (no recalls or complaints for 2140US model/components).

The CPSC apparently treated the subpoena as a Freedom of Information Act ("FOIA") request, *see* Filing No. 36-9 (Ex. I), and consistent with the CPSC's governing rules, and eventually solicited HP's comment on the nature of the information and the propriety of its release under FOIA and 15 U.S.C. § 2055 (Section 6 of the Consumer Product Safety Act). On or about March 22, 2010, the CPSC responded to Plaintiff's FOIA request by producing 1383 pages of recall documents, some portions of which were either redacted or withheld by the CPSC pursuant to governing FOIA disclosure

exemptions for proprietary and confidential material.  *See* Filing No. 36-10 (Ex. J). <u>Once again, none of these documents pertain to the product actually at issue in this case</u>.

Plaintiff was apparently not satisfied with redacted documents pertaining to other product recalls, but did not pursue an appeal of the CPSC's partial denial of access to records in accordance with CPSC rules, nor did Plaintiff file suit against the CPSC seeking production.  *See Id.* at 4 (CPSC letter specifying that "[a]ccording to the Commission's FOIA regulations at 16 C.F.R. § 1015.7, a partial denial of access to records may be appealed within thirty (30) days of your receipt of this letter . . ."). Instead, on April 5, 2010, Plaintiff served additional discovery Requests on HP seeking to discover, directly from HP, all communications with the CPSC regarding the "other product" recalls, as well as the complete unredacted content of documents provided by the CPSC.  *See* Filing No. 36-2; *see also* Filing No. 36-5 (Letter from Plaintiff's counsel suggesting "[r]ather than litigate the objections made by the CPSC . . . we sought directly from you the same documents . . . .").  HP timely objected to these requests on May 7, 2010.  *See* Filing No. 36-3.

During the same time frame, the parties were actively scheduling and completing depositions in the case.  In fact, by letter dated May 12, 2010, Plaintiff's counsel confirmed the previously-scheduled deposition of Abraham for June 3, 2010, as well as numerous other witnesses in the same week.  *See* Sharp Decl., Ex. E (letter confirming deposition dates).  Five days later, however, Plaintiff reversed course on Abraham, indicating that it would not produce Abraham for deposition until resolution of the parties' dispute over CPSC documents.  *See* Filing No. 36-5 (Ex. E).  On or about June

5

1, 2010, counsel for Plaintiff and HP had a conference call to discuss upcoming depositions and HP's objections to the CPSC documents.  During the call, HP reiterated its objections to Plaintiff's discovery requests, and Plaintiff's counsel indicated he would continue to withhold Abraham from deposition until resolution of the parties' dispute.  These issues are now the subject of competing motions to compel and HP's request for a protective order prohibiting further disclosure of CPSC documents.

### III.     STANDARD OF REVIEW

Under Rule 26(b)(1), the parties may obtain discovery of nonprivileged material "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1) (emphasis added). This language is designed to signal "to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."  Fed. R. Civ. P. 26 (2000 Advisory Committee Note).  Moreover, the Federal Rules of Civil Procedure permit the court to limit the frequency or extent of discovery when the same is unreasonably cumulative or duplicative or the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.  *Hajek v. Kumho Tire Co., Inc.*, No. 4:08CV3157, 2010 WL 503044 at *5 (D. Neb. Feb. 8, 2010).

The trial court enjoys broad discretion "to tailor discovery narrowly and to dictate the sequence of discovery." *Hajek*, 2010 WL 503044 at *5 (*quoting Crawford-El v. Britton*, 523 U.S. 574, 599, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)).  Pursuant to Fed. R. Civ. P. 26(c)(1), the court may grant a wide variety of relief to parties contesting discovery requests, including the entry of an order (A) forbidding the disclosure or

6

discovery; . . . (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . ." Conversely, when the court believes that discovery is appropriate or that party has obstructed the discovery process without justification, pursuant to Fed. R. Civ. P. 37, the court has wide discretion to compel compliance. *Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606, 612 (D. Neb. 2001).

## IV. ARGUMENT

### A. Plaintiff's Attempt To Seek "Other Product" Recall Information Is A Fishing Expedition That Fails To Meet The Threshold Standard For Discoverability

While the scope of discovery is broader than the scope of admissibility, "this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). To avoid such fishing, the proponent of discovery must make a threshold showing of relevance, particularly if the information does not appear to reasonably bear on the claims and defenses at issue in the case. *Id.* This threshold showing is particularly important in products liability cases involving large product manufacturers, where the potential for abuse of the discovery process regarding unrelated products and designs is significant. *See, e.g., Hajek*, 2010 WL 503044 at *1-2 (requests to tire manufacturer for information encompassing numerous unrelated tire models). Mere speculation that information might be useful does not suffice. *See Hofer*, 981 F.2d at 382 (refusing to allow "expedition into predecessor models"); *accord Hajek, supra.*

The Plaintiff's attempt to obtain CPSC recall information on different products in this case fails to meet the foregoing standards. The recalls on which Plaintiff seeks information do not involve the same model computer, do not involve the same battery pack, do not have the same battery cell components or manufacturer (much less the

7

same cell manufacture lot), and do not appear to have corresponding manufacture dates. Furthermore, because Plaintiff's experts, particularly Dr. Abraham, have failed to advance any causative theory of defect, Plaintiff is unable to plausibly show any connection between the computer at issue and recalled models based on some allegedly "shared" problem. Thus, Plaintiff's efforts to obtain unredacted CPSC documents <u>after</u> designating expert opinions which conspicuously lack a defect explanation indicate that Plaintiff is on a mere fishing expedition. *See Hajek*, 2010 WL 503044 at * 7 and explanation *infra*. Indeed, the fact that Plaintiff has linked the deposition of his designated battery expert to the production of the unredacted CPSC documents pertaining to other products proves the point, because if, in fact, the Plaintiff had a viable theory as to the product at issue in this case, there would be no need for Dr. Abraham to see CPSC information for other products prior to his deposition. The fact that the deposition has been postponed by plaintiff is indicative of the fact that Plaintiff has an expert searching for theory – having failed to proffer one in his written disclosure.

      The disconnect between what Plaintiff is seeking and the issue in this case is demonstrated by an example. One of the several recall bulletins issued identified by Plaintiff (and on which Plaintiff sought documents from the CPSC) is dated October 30, 2008. *See* Filing No. 36, Ex. A at 11 of 24. The bulletin indicates the recall was issued after 19 reports of overheating, and was for specific Sony-manufactured batteries incorporated into specific models of computers (including models from Dell, Toshiba, and HP). Further, in HP's circumstance, the particular models affected by the recall were sold between December 2004 and December 2006. Here, there is no similar

8

history of complaints for the Compaq Presario 2140US, the computer at issue does not use the same Sony-manufactured batteries, and the computer at issue was sold more than a year before the pertinent recall sales period. Thus, information regarding this recall is not only inadmissible in Plaintiff's case, *see Bizzle v. McKesson Corp.*, 961 F. 2d 719 (8th Cir. 1992), but any suggestion that discovery of unredacted documents concerning this recall will somehow lead to admissible evidence in this action is fantasy.

Reduced to its core, Plaintiff's contention in briefing appears to be that, merely because its expert says that a single battery cell in the computer at issue allegedly failed (for unknown reason), Plaintiff is automatically entitled to discovery from HP about any and all recalls that involve a battery, regardless of make, model, date of manufacture, date of sale, or reason for recall. This absurd position is essentially identical to arguments rejected in both *Hajek,* 2010 WL 503044 at *6-7, and *State ex rel. Kawasaki Motors Corp. v. Ryan*, 777 S.W.2d 247, 251 (Mo. App. 1989).

In *Hajek*, a product liability case involving a particular Khumo-brand tire, the Plaintiffs sought numerous proprietary information as to <u>all</u> of Kumho's tires, not just the model at issue. Khumo objected to the Plaintiff's requests for "other tire" information but, as HP did in this case, produced information regarding the tire model at issue pursuant to a protective order. *See Hajek*, 2010 WL 503044 at *5. The Plaintiff then moved to compel production of "other tire" information on the basis of affidavit testimony by its expert witness.[1] Khumo responded by pointing out that Plaintiff's expert had merely identified a product failure (tread separation) but was unable to advance "any likely cause of the alleged tread separation or what component of the accident tire was defectively designed or manufactured…." *Id.* at *7. Since there was "no component or

9

manufacturing process identified that c[ould] be used to decide which tires are potentially similar for the purpose of [the] litigation," Khumo argued that the plaintiff was merely on a "fishing expedition," and Magistrate Judge Zwart agreed.

Similarly, in *Kawasaki Motors.,* the Plaintiffs sued for injuries sustained in an accident involving a particular model of ATV known as the "Tecate," and subsequently pursued discovery against the defendants for broad categories of information encompassing numerous models of ATV. The court granted a writ of prohibition, concluding that the discovery sought was "defectively overbroad, oppressive, burdensome and intrusive . . . ." *Id.* at 252. The court identified the problems with Plaintiff's requests as follows:

> A number of the requests are <u>not limited by time considerations relating to the manufacture of the Tecate, other matters, or to the same or similar Tecate models</u>, KXT 250-A1, KXT 250-A2, or KXT 250-A3, but are applicable to any and all models. . . . Discovery of the Kawasaki line of ATVs in the order of respondent includes 38 different models. All these models are designed for different purposes and, while they have some common characteristics, they are not "substantially similar." <u>There are many differences between the various models</u>. Many requests are overbroad and vague, e.g. requests Nos. 4, 10 and 11-seeking all dealer bulletins pertaining to changes, seeking the names of all advertising agencies which have "been involved in any way in advertising any Kawasaki"; seeking documents relating to users or "profiles" of users or "purchase habits" of users; and seeking marketing and sales plans. Furthermore, <u>the requests are not limited to the same or similar circumstances of the accident at issue, or the alleged defective components</u> or complaints regarding similar mishaps.

*Id.* (emphasis added). The court in *Kawasaki Motors* ultimately concluded that "[w]hile it may well be proper, under the rules of discovery, to obtain information concerning other prior injuries or complaints caused by the product, the discoverability of such other complaints is limited to the same or similar model." *Id.* at 253; *see also Keller v.*

---

[1] No similar supporting affidavit has been provided by Plaintiff in this case.

10

*International Harvester Corp.*, 648 S.W.2d 584 (Mo. App.1983)(refusing discovery in action involving lawnmower because "some of the accidents included in the reports could well have resulted from entirely different mower models and under entirely different conditions . . . .").

Here, the Plaintiff in this case has already received thousands of pages of discovery on the relevant model (Presario 2140US), and has already been informed that HP knows of no complaints about the same, and it is undisputed that the recalls at issue do not involve the Compaq Presario 2140US or its battery components. Moreover, because a battery cell can suffer an internal failure for many reasons, including being in a fire caused by something else, the inability of Plaintiff to provide any plausible theory of defect indicates that Plaintiff is impermissibly fishing at this late stage. Thus, Plaintiff's insistence on receipt of unredacted CPSC documents on "other product" recalls clearly runs afoul of *Hajek* and *Kawasaki Motors*, and ought not be permitted.

Further, even setting aside that there is no connection to the model of computer, battery, or battery cell at issue in this lawsuit, it also bears noting that Plaintiff's Motion to Compel and associated briefing is phrased entirely in generalities about the entire set of CPSC documents. This is apparently because Plaintiff believes it is indiscriminately entitled to every single piece of information to/from the CPSC on every recall it has identified in its Motion to Compel. This position is untenable, and is the equivalent of HP asking Plaintiff to produce all of its insurance claim files regarding its investigation and handling of other fire cases that happen to involve computers (to which Plaintiff would no doubt strenuously object -- *see, e.g., U.S. Fire Ins. Co. v. Clearwater Oaks*

*Bank,* 421 So.2d 783, 784 (Fla.App. 1982) (refusing production of other claim files on relevance grounds)).

Plaintiff already possesses 1383 pages of CPSC documents, yet it has failed to provide any example of a document which it can honestly say is relevant to its claims and defenses herein, much less admissible at trial of this case. Likewise, while Plaintiff's obvious target is redacted/withheld information, it is perfectly clear from reviewing the redactions themselves that Plaintiff seeks information it can never hope to utilize for any purpose – other than, perhaps, other litigation[2]. By way of random example only (and there are many), Plaintiff has sought production of an unredacted version of CPSC page 63 of 328 from Recall File RP060182, which is provided herewith in its redacted form, just as Plaintiff possess it. *See* Sharp Decl., Ex. F. The document is a monthly progress report on corrective action dated June 30, 2006, and redacted from the document are numeric counts of recalled product locations, notification measures by type, customer calls to 800 numbers, and number of incidents. There are numerous similar redactions in the documents which Plaintiff seeks. There is truly zero legitimate use for any of this information by Plaintiff in this case, and it demonstrates that Plaintiff has made no real attempt to actually review the CPSC documents or to craft document requests seeking legitimately discoverable information.[3] For this reason alone, Plaintiff's Motion to Compel should be denied. *See, e.g., Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2004) (affirming district court's quashing

---

[2] In this regard, it should be noted that the Insurance Company Plaintiff and its law firm herein have another case pending against HP in which it alleges that a different product caused a fire.

[3] To the extent the Court wishes to review the entire 1300-page CPSC production, HP will submit the same upon request. If the Court seeks unredacted versions, HP requests that the same be kept under seal and viewed *in camera*.

of plaintiff's subpoenas in case in which the district court concluded the plaintiff was on a "fishing expedition").

### B. Plaintiff's Claims Of "No Objection" And "No Prejudice Due To A Protective Order" Fail

Plaintiff makes a half-hearted assertion in briefing that production of the irrelevant CPSC information is somehow warranted because HP did not initially "object" to the subpoena that Plaintiff had prepared to the CPSC. Plaintiff's argument on this point appears to be that Plaintiff should be allowed to have irrelevant and proprietary documentation merely because there was not an initial objection by a party to an ineffective subpoena to a third party. As the Court is aware, however, submission of third-party subpoenas is routine, and the reasons for objecting thereto are limited, in part because the litigant often lacks standing to directly assert objections to documents in the possession of a non-party. *See, e.g., Mawhiney v. Warren Distribution, Inc.*, No. 8:05CV466, 2007 WL 433349 at *1 (D. Neb. Feb. 7, 2007) (noting that party-litigant "does not have standing to object to the production of [the third party's] privileged documents or the lack of the subpoena's specificity."). Here, whether HP would have initially "objected" or not, the CPSC would have treated the Plaintiff's ineffectual subpoena as a FOIA request pursuant to is governing rules, and there is no debate that the applicable statutory process for with the CPSC was followed. HP could not have known what documents the CPSC would provide in advance, and thereafter properly asserted its objections in accordance with CPSC procedure.

Likewise, Plaintiff's repeated suggestion that production of the irrelevant CPSC information is warranted because there is already a protective order in place deliberately ignores the primary problem with the underlying discovery requests. The

protective order governs the confidentiality of documents which are <u>properly the subject of discovery</u> (*i.e.*, information on the model of computer and components allegedly at issue). HP has had no difficulty with producing information under the existing protective order, provided that the same is sought in <u>properly narrow requests</u> for information <u>legitimately pertinent to the model of computer/battery component</u> at issue in this case. The protective order entered herein is not a license to make indiscriminate requests for information beyond the proper scope of discovery.

### C. Plaintiff Has No Right To Withhold The Deposition of Dr. Abraham

Finally, Plaintiff's decision to cancel Dr. Abraham's scheduled deposition based on HP's objections to producing CPSC documents was unjustified and should be rejected. The CPSC documents are not properly discoverable, and cannot form a proper basis for Dr. Abraham's opinion. More importantly, the documents <u>did not</u> inform Dr. Abraham's opinion, as Dr. Abraham disclosed his report prior to Plaintiff's receipt of any CPSC documents, after a full opportunity to inspect, test, and photograph the actual computer owned by Plaintiff's insureds. HP has a right to depose Dr. Abraham now on the content of his opinion, regardless of the court's decision on the disclosure of unredacted CPSC documents, particularly since HP is the party which bears the cost of Dr. Abraham's deposition time.

### V. CONCLUSION

For the reasons herein, HP requests that Plaintiff's Motion to Compel be denied and that the court issue an order specifying that the Plaintiff's requested supplemental discovery not be had, and further, that Plaintiff be directed to make Dr. Abraham available for deposition without delay.

Dated this 1st day of July, 2010.

                          HEWLETT-PACKARD COMPANY, Defendant,

By: s/John A. Sharp
     John A. Sharp (NE# 23111)
     Thomas E. Johnson (NE# 12089)
of  BAIRD HOLM LLP
     1500 Woodmen Tower
     Omaha, NE 68102-2068
     Phone: 402-344-0500
     Fax: 402-344-0588
     jsharp@bairdholm.com
     tjohnson@bairdholm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of July, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Anthony J. Morrone
Julie J. Noonan
Marisa L. Saber
COZEN O'CONNOR
amorrone@cozen.com
jnoonan@cozen.com
msaber@cozen.com

                          s/John A. Sharp

DOCS/981163.3

15